JUDGE MARRERO

11 CV 3520

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
CARL VITALONE, Individually and On  : Civil Action No.
Behalf of All Others Similarly Situated, :
                                        : CLASS ACTION COMPLAINT
                Plaintiff,              : FOR VIOLATIONS OF FEDERAL
                                        : SECURITIES LAWS
    vs.                                 :
                                        : **JURY TRIAL DEMANDED**
LOGITECH INTERNATIONAL SA,              :
GERALD P. QUINDLEN and ERIK             :
BARDMAN,                                :
                                        :
                Defendants.             :
                                        :
---------------------------------------------------------------- x

[RECEIVED MAY 23 2011 U.S.D.C. S.D.N.Y. CASHIERS stamp]

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Logitech International SA ("Logitech" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of purchasers of the common stock of Logitech between October 28, 2010 and April 1, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6. Plaintiff Carl Vitalone, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Logitech during the Class Period and has been damaged thereby.

7. Defendant Logitech engages in the development and marketing of products in PC navigation, Internet communications, digital music, home-entertainment control, gaming, and wireless devices. Logitech is based in Apples, Switzerland.

8. (a) Defendant Gerald P. Quindlen ("Quindlen") served as Logitech's President and Chief Executive Officer ("CEO") during the Class Period.

(b) Defendant Erik Bardman ("Bardman") served as Logitech's Chief Financial Officer ("CFO") and Senior Vice President Finance during the Class Period.

(c) Defendants Quindlen and Bardman are collectively referred to herein as the "Individual Defendants."

9. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Logitech, by

virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the Nasdaq National Market ("NASDAQ"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Logitech, each of the

Individual Defendants had access to the adverse undisclosed information about Logitech's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Logitech and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Logitech common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Logitech's business, operations, management and the intrinsic value of Logitech common stock; (ii) enabled Logitech insiders to sell at least 536,000 shares of their personally-held Logitech common stock generating more than $10 million in proceeds; and (iii) caused Plaintiff and other members of the Class to purchase Logitech common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the common stock of Logitech during the Class Period, inclusive (the "Class Period") and who were damaged

thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Logitech common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Logitech or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Logitech; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

20. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21. Defendant Logitech engages in the development and marketing of products in PC navigation, Internet communications, digital music, home-entertainment control, gaming, and wireless devices. The company operates in two segments, Personal Peripherals and Video Conferencing.

22. The Class Period commences on October 28, 2010. On October 27, 2010, after the close of the market, Logitech issued a press release announcing its financial results for the second quarter of fiscal year 2011, the period ending September 30, 2010. For the quarter, the Company reported that sales were $582 million, up 17 percent from the same quarter last year. Defendant Quindlen commented on the results stating in pertinent part as follows:

> As a result of our very strong gross margin performance in the first half of FY 2011, we have raised our operating income outlook for the full fiscal year. In addition, we have raised our sales outlook for the full fiscal year to include our initial estimate of sales for our line of products for Google TV. We're very encouraged both by early indicators of enthusiasm for our Logitech Revue with Google TV and associated peripherals and the opportunity for developing another long-term growth driver for our business.

The press release also raised the Company's sales outlook stating in pertinent part as follows:

For Fiscal Year 2011, ending March 31, 2011, Logitech has raised its sales outlook from the previous range of $2.3 to $2.35 billion to the new range of $2.35 to $2.4 billion. The target for operating income has been raised from the previous range of $160 to $170 million to the new range of $170 to $180 million. Expected gross margin has increased to approximately 36 percent from the previous range of 34 to 35 percent. The expected tax rate continues to be approximately 16 percent.

23. On October 28, 2010, Logitech held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations. During the call, Defendant Quindlen spoke positively about the demand for the Company's products, the following exchange took place:

**Jonathan Tseng - Merrill Lynch - Analyst**

And on the demand side, can you reconcile what you're saying in terms of better demand, your stock (inaudible) leverage-- areyou ready for that and the fact that year-over-year growth rates appear to be slowing in EMEA and the US. Now, obviously, there's a funny-- I think if I (inaudible) my phone to, say 24 months ago, the growth trend is still improving, but can you reconcile kind of getting ready for a better holiday season and growth rates slowing?

**Gerry Quindlen - Logitech International - President & CEO**

Yes, let me just clarify. If you look at the sell-through growth rate in Europe, it was actually very good. It improved 22% year-on-year, and I believe it was up sequentially versus Q1, but, in Europe, actually, in Europe and in AMR, we did see in September demand happened very late, and I'll talk about each of them individually. In the case of Europe, I was very pleased with the sell-through growth we saw, but Europe-- since the September quarter is always our most back-ended quarter. July and August are fairly low months, so it's always a September-driven quarter, and this year, the demand materialized even later than normal, and as a result, frankly, we weren't able to replenish a lot of our customers because some of the demand happened too late.

The good news there is, in the first few weeks of Q3, we've actually seen our shipments up substantially versus prior years, so, I like the momentum that we're carrying into Q3.

In the case of AMR, we were down, I think, from about 17% in Q1 to about 12%. AMR was similar to Europe in that demand--well, actually, the quarter started out quite strong in terms of demand, and then we did see some mid-quarter softness,

and what we saw was very consistent with what I saw a lot of US retailers reporting and a lot of other tech companies reporting which was that back-to-school seemed to happen very late.

The good news is that September picked up substantially. We exited the quarter, from a demand standpoint, with very good demand that we carried into Q3, so I'm cautiously optimistic that that will stay there, and that we'll have a good Christmas season, but I-- and I like the momentum that I see so far in Q3.

During the conference call, Defendant Bardman spoke positively about consumer demand for the Company's products, the Company's inventory position and the increase in guidance stating in pertinent part as follows:

I think just a little bit to talk about it, when you look at the inventory build, and I'll sort of give you a sense of it in terms of how we look at it sequentially, we do always see an increase in inventory as we go from the end of Q1 to the end of Q2, because, as you know, we're building for our highest-volume quarter of the year in Q3. And as Gerry mentioned and I talked about in our prepared remarks as well, we want to put a little bit of additional buffer. It's not in any one specific place. It's more related to making sure that we're in a good position to serve our customers if we do see an uptick in consumer demand.

But, let me be really clear. We haven't baked into our guidance and what we've told you today a large uptick in consumer demand. We just want to be in a really good service position, if it were to happen. The other thing I would say, too, when we look at levels of inventory, there's really two metrics that we're focused on internally. The first is the age of the inventory, okay? And we feel our channel-- excuse me, our inventory is very healthy today in terms of the aging, and part of the reason for that is we're just coming off of our product refresh cycle which happens over the summer months and into the early Fall, so we've got new products in our warehouses ready to go for our customers, and so we feel very well positioned, and so if that additional higher demand that we're preparing for could happen-- does not materialize, we feel well-positioned that, because of the freshness of the inventory, we would handle that as we go into the end of Q3 and into Q4.

24. On November 9, 2010, Logitech held its Analyst & Investor Day 2010. Throughout the day, Logitech and its senior management, including the Individual Defendants, made numerous positive statements about the Company and its operations.

25. On December 2, 2010, Defendant Bardman appeared at the Credit Suisse Annual Technology Conference and made numerous positive statements about Logitech and its business.

26. On December 8, 2010, Defendant Quindlen appeared at the NASDAQ OMX 25th Investor Program in London and made numerous positive statements about Logitech and its business.

27. On January 26, 2011, Logitech issued a press release announcing its financial results for the third fiscal quarter of 2011. For the quarter, the Company sales were $754 million as compared to $617 million in the same period the prior year. Defendant Quindlen commented on the results stating in pertinent part as follows:

> We are very pleased with our Q3 performance, which included our highest-ever quarterly sales and strong year-over-year growth in both sales and operating income... All of our retail product categories contributed to our sales growth, with double-digit increases in remote controls, pointing devices, video and gaming. OEM sales made a very solid contribution, and the momentum continued for our LifeSize division, which delivered the highest-ever quarterly sales in its history.
>
> A highlight of the quarter was the launch of Logitech Revue with Google TV and related peripherals. We are confident about the long-term potential of the Google TV platform and look forward to continued enhancements around the platform as we work with Google to push periodic over-the-air software updates.

The press release also raised the Company's sales outlook stating in pertinent part as follows:

> For Fiscal Year 2011, ending March 31, 2011, Logitech has increased its sales outlook from the previous range of $2.35 to $2.4 billion to the new range of $2.4 to $2.42 billion. The target for operating income for the full year remains in the range of $170 to $180 million. Expected gross margin continues to be approximately 36 percent. The expected tax rate has been lowered to approximately 14 percent.

28. On January 27, 2011, Logitech held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations. During the call, Defendants made positive statements about Logitech, its business, earnings and operations.

29. On February 10, 2011, Defendant Bardman appeared at the Stifel Nicolaus Technology and Telecom Conference 2011 and made numerous positive statements about Logitech and its business.

30. On February 28, 2011, Defendant Bardman appeared at the Morgan Stanley Technology, Media and Telecom Conference 2011 and made numerous positive statements about Logitech and its business.

31. The statements referenced above in ¶¶22-30 were each materially false and misleading when made because they failed to disclose and misrepresented the following material adverse facts which were known to Defendants or recklessly disregarded by them:

(a) that the Company's distributors were overstocked with inventory of certain product lines;

(b) that the Company's pricing and promotional activity was not operating according to plan;

(c) that demand for the Company's products in the EMEA market was significantly declining far below internal expectations; and

(d) as a result of the foregoing, Defendants' positive statements about the Company were lacking in a reasonable basis of fact and were materially false and misleading when made.

32. Then, on March 31, 2011, after the close of the market, Logitech issued a press release announcing that it "has lowered its full-year outlook for Fiscal Year 2011, ending March 31, 2011. The company now expects FY 2011 sales in the range of $2.35 to $2.37 billion, down from the previous range of $2.4 to $2.42 billion. FY 2011 operating income is now expected to be in the range of $140 to $150 million, down from the previous range of $170 to $180 million." The press release blamed the shortfall on a slowdown in the Company's EMEA retail sales region stating in pertinent part as follows:

> The projected shortfalls in both sales and profitability are primarily due to weakness in the company's EMEA retail sales region. Logitech has experienced

lower than expected demand for its retail products in EMEA from both distribution partners and consumers.

33. In response to the announcement, on April 1, 2011, the price of Logitech stock declined from $18.13 per share to $14.71 per share, or 19%, on extremely heavy trading volume.

34. Analysts were quick to lower their ratings on Logitech stock and express dissatisfaction with the Company's surprise announcement.

35. On April 27, 2011, Logitech issued a press release announcing its financial results for the fourth fiscal quarter and full year of Fiscal Year 2011. For the quarter, the Company reported that operating income was $3.6 million, a decrease of 87 percent compared to $27.7 million in the same quarter the prior year. Defendant Quindlen commented on the stating in pertinent part as follows:

> FY 2011 was a strong year for the company, with sales growth of 20 percent and operating income nearly doubling, driven by our LifeSize division and our Americas and Asia retail regions. . . The disappointing conclusion to FY 2011 – which resulted in lower-than expected full-year sales, operating income and gross margin – was due to weaker than anticipated demand in the second half of Q4 for our products in EMEA. The weakness in demand in EMEA was compounded by poor execution of channel pricing and promotional programs within the region, which we have begun to remedy

36. The market for Logitech common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Logitech common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Logitech common stock relying upon the integrity of the market price of Logitech common stock and market information relating to Logitech, and have been damaged thereby.

37. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Logitech common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein,

not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

38. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Logitech's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Logitech and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

39. As alleged herein, Defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Logitech, their control over, and/or receipt and/or modification of Logitech's allegedly materially misleading misstatements and/or their associations

with the Company which made them privy to confidential proprietary information concerning Logitech, participated in the fraudulent scheme alleged herein.

40. During the Class Period, while in the possession of material non-public information about Logitech and its business, Logitech insiders collectively sold more than 536,00 shares of their personally held Logitech stock to the public generating proceeds of more than $10 million. These sales further evidence Defendants' knowledge of the adverse facts detailed herein.

**Applicability of Presumption of Reliance:**
**Fraud on the Market Doctrine**

41. At all relevant times, the market for Logitech's common stock was an efficient market for the following reasons, among others:

(a) Logitech stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Logitech filed periodic public reports with the SEC and the NASDAQ;

(c) Logitech regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Logitech was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

42. As a result of the foregoing, the market for Logitech's common stock promptly digested current information regarding Logitech from all publicly available sources and reflected

such information in Logitech's stock price. Under these circumstances, all purchasers of Logitech's common stock during the Class Period suffered similar injury through their purchases of Logitech's common stock at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

43. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Logitech who knew that those statements were false when made.

### COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary

in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

47. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Logitech common stock. Plaintiff and the Class would not have purchased Logitech common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

48. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Logitech common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Logitech within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Logitech, and their ownership of Logitech stock, the Individual Defendants had the power and authority to cause Logitech to engage in the wrongful conduct

complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: May 23, 2011

ROBBINS GELLER RUDMAN
 & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

_____
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

HOLZER HOLZER & FISTEL LLC
MICHAEL I. FISTEL, JR.
MARSHALL DEES
200 Ashford Center North, Suite 300
Atlanta, GA 30338
Telephone: 770/392-0090
770/392-0029 (fax)

DYER & BERENS LLP
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, Colorado 80203
Telephone: 303/861-1764
303/395-0393 (fax)

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1.   Plaintiff has reviewed the complaint and authorized its filing.

2.   Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

3.   Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.   Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| LOGI | 11/10/10 | 400 | 8,462. |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| LOGI | | | |

5.   During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

1

6.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __16__ day of __MAY__, 2011 in __Rome_____, __N.Y._____.
                                                   City                      State

(Signature) X __[signature]_____

(Print Name) __CARL VITALONE_____

2